UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

YAGOOZON, INC.           :
                         :
    v.                   :    C.A. No. 13-595ML
                         :
FUN EXPRESS, LLC         :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) is Defendant Fun Express, LLC's Motion to Dismiss. (Document No. 9). Plaintiff Yagoozon, Inc. filed an Objection. (Document No. 11). A hearing was held on December 17, 2013. After reviewing the parties' submissions, listening to the arguments of counsel and reviewing relevant legal research, I recommend that Defendant's Motion to Dismiss be GRANTED.

**Background**

Plaintiff ("Yagoozon") is a Rhode Island corporation that is in the business of marketing children's toys, novelty items and party goods on the Internet, including at www.amazon.com. (Document No. 1, ¶¶ 1, 6). Defendant ("Fun Express") is a limited liability company with its principal place of business in Omaha, Nebraska. Id. ¶ 2. Fun Express is a wholly-owned subsidiary of Oriental Trading Co., the nation's largest direct retailer of party goods. Id. ¶¶ 8, 9; Document No. 4.

In 2011, Yagoozon began purchasing products from Fun Express. (Document No. 1, ¶ 10). Yagoozon alleges that Fun Express did not maintain or enforce a "minimum advertised price" policy at any relevant time. Id. ¶ 11. In 2012, however, Fun Express notified Yagoozon that it was not in compliance with Fun Express' minimum advertised price policy because Yagoozon's pricing was not identical to Oriental Trading Co. in connection with a similar, but not identical, item offered for sale

by Oriental Trading Co. Id. ¶ 12. Following that notification, Fun Express cancelled an order with Yagoozon and has refused to sell any product to Yagoozon. Id. ¶ 13.

Yagoozon initiated this action under the Sherman Act, 15 U.S.C. §§ 1-7, the Robinson-Patman Act, 15 U.S.C. § 13, the Federal Trade Commission Act, 15 U.S.C. §§ 41-58 and the Clayton Act, 15 U.S.C. § 13. Fun Express has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Dismissal Standard

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559). See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility

assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).  Moreover, "in antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Yangtze Optical Fibre v. Ganda LLC., No. 04-474ML, 2006 WL 1666180, * 1 (D.R.I. June 9, 2006) (citing Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 746 (1976)).

    **B.**    **Discussion[1]**

    **1.**    **Yagoozon's Claims Under the Sherman Act**

The Sherman Act, 15 U.S.C. § 1 et. seq. prohibits the "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations...."  Plaintiff alleges a violation of the Sherman Act because Fun Express "fixed prices," "discriminated against Plaintiff," terminated its distributorship and "conspired with Oriental Trading Co. to oust Plaintiff from the market for items produced by Defendant."  (Document No. 1, ¶¶ 18- 24).

    **A.**    **Sherman Act, 15 U.S.C. § 1**

Yagoozon's claim under Section 1 of the Sherman Act is based on its allegation that Fun Express conspired with Oriental Trading Co. to "oust Plaintiff from the market for items produced by Defendant."  (Document No. 1, ¶ 24).  Despite the indulgences I am required to accord to Yagoozon

---

[1] In addition to attacking the merits of each claim, Fun Express also asserts that Yagoozon's Complaint fails because Yagoozon does not have antitrust standing and did not suffer an "antitrust injury." In Yangtze, the District Court discussed antitrust standing in detail, explaining that "the proper question is not whether the complaining party has alleged the elements of a per se, rule of reason, or other antitrust claim, but rather, whether that party has alleged an injury to itself that is a matter of antitrust concern." 2006 WL 1666180 at *3.  The District Court noted that various factors must be analyzed to determine if an "antitrust injury" occurred in the context of a standing analysis.  Because I am recommending dismissal of the Complaint based upon Yagoozon's failure to state the required elements of the claims it pled, the determination of whether Yagoozon suffered an "antitrust injury" is immaterial to the recommendation I am making, and thus I decline to analyze the standing issue.

at this stage of the proceedings, the allegations pled under Section 1 do not raise a plausible entitlement to relief. Yagoozon's Section 1 claim fails because Yagoozon alleges two scenarios that cannot occur simultaneously: that (1) Yagoozon is a subsidiary of parent corporation Oriental Trading Co.[2] and (2) that Fun Express and Oriental Trading Co. "conspired" to eliminate Yagoozon from the market. (Document No. 1, ¶¶ 8, 24). In short, a parent and its wholly-owned subsidiary are legally incapable of conspiring in violation of Section 1. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984).

The Copperweld Court started its analysis by noting that a conspiracy requires "two or more entities that previously pursued their own interests separately [to] combin[e] to act as one for their common benefit." 467 U.S. at 769. The Court went on to explain that a parent and its subsidiary are incapable of engaging in a conspiracy because they "have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one....If a parent and a wholly owned subsidiary do 'agree' to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for § 1 scrutiny." Id. at 771.

Yagoozon's Complaint is straightforward in its allegations concerning the alleged conspiracy between Fun Express and Oriental Trading Co. Yagoozon states that in 2011 it began conducting business with Fun Express and that it did not believe any "minimum adverstised price" ("MAP") policy existed. (Document No. 1, ¶¶ 10-11; Document No. 11-1, p. 2). However, Yagoozon also states that in 2012 "Fun Express contacted Yagoozon stating that it was violating Fun Express's MAP policy...Fun Express explained that Yagoozon's pricing was not identical with parent corporation

---

[2] Fun Express' Corporate Disclosure Statement filed pursuant to Fed. R. Civ. P. 7.1 confirms that Oriental Trading Co. is the parent of Fun Express. (Document No. 4).

Oriental Trading Co. in connection with a similar item offered by Oriental Trading." (Document No. 1, ¶ 12, Document No. 11-1, p. 2).  In its Objection, Yagoozon characterizes Fun Express' allegedly non-existent MAP policy as a "pretense" to discontinue doing business with Yagoozon based on its conspiracy with Oriental Trading to "eliminate Yagoozon from the market for party goods, as Oriental Trading has significant market power to affect the party goods market." (Document No. 11-1, p. 2).  Taken as true, these facts, at best, demonstrate that Oriental Trading Co. and Fun Express made a business decision to cease doing business with Yagoozon and articulated a sham reason for doing so.  Unfortunately for Yagoozon, it has not shown any viable legal basis for recovery under Section 1 based on this set of circumstances.

Similarly, Yagoozon's attempts to distinguish the holding in Copperweld fall short.  Yagoozon's Complaint and Objection both plainly allege that Oriental Trading is the parent corporation to Fun Express, but after the Motion to Dismiss was filed, Yagoozon backtracked from its allegations, and attempted to cast doubt on its own allegations by arguing that the two entities might be merely "affiliated entities" or have a disaggregation of functions such that Copperweld is inapplicable.  Yagoozon did not present any new evidence to cast dispersion on the facts it had previously alleged and has not moved for leave to amend its Complaint.  Yagoozon's allegations are clear, and they are corroborated by Fun Express' corporate disclosure filing.  Yet, Yagoozon argues that, "if after discovery the evidence shows that Fun Express and Oriental Trading have distinct interests or functions, then they would be capable of conspiring for purposes of § 1 of the Sherman Act." (Document No. 11-1, p. 9.) While Yagoozon may well be correct, its argument is directly contradicted by the facts it pled in its own Complaint and the documentation set forth by Fun Express.  Speculation alone cannot carry Yagoozon into the discovery phase on this claim.

Finally, the Court is mindful that even though Yagoozon undoubtedly suffered some detrimental business effects from its inability to purchase products from Fun Express, that does not mean there is redress under the antitrust laws. The Supreme Court noted that it "cannot be denied that § 1's focus on concerted behavior leaves a 'gap' in the Act's proscription against unreasonable restraints of trade. ...[i]t leaves untouched a single firm's anticompetitive conduct (short of threatened monopolization) that may be indistinguishable in economic effect from the conduct of two firms subject to § 1 liability.  We have already noted that Congress left this 'gap' for eminently sound reasons.  Subjecting a single firm's every action to judicial scrutiny for reasonableness would threaten to discourage the competitive enthusiasm that the antitrust laws seek to promote." Copperweld, 467 U.S. 774-775.  The facts alleged by Yagoozon fall into the "gap" discussed by the Copperweld Court and do not state a claim under Section 1 of the Sherman Act.  For these reasons, I recommend that Yagoozon's claims under Section 1 of the Sherman Act be dismissed.

  **B.**  **Sherman Act/Monopolization, 15 U.S.C. § 2**

In its Objection to the Motion to Dismiss, Yagoozon notes that it "brought suit under 15 U.S.C. §§ 1-7, inclusive of section 2 [of the Sherman Act.]" (Document No. 11-1, p. 5, fn1).  Yagoozon notes that "Section 2 applies to all types of unilateral conduct by firms, and thus covers a vast range of activities." Id.  While there are no allegations in the Complaint that are specifically geared toward a Section 2 claim, the Court will nevertheless consider whether there is any plausible theory under which Yagoozon could obtain relief under Section 2.  Section 2 makes it unlawful for a party to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  15 U.S.C. § 2.

First, any claim under Section 2 requires evidence that, "the defendant has monopoly power and the defendant 'has engaged in impermissible exclusionary practices with the design or effect of

protecting or enhancing its monopoly position.'" CCBN.Com, Inc. v. Thomson Fin., Inc., 270 F. Supp. 2d 146, 156-157 (D. Mass. 2003) (citing Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195-196 (1st Cir. 1996) (emphasis added) (citations omitted)). The first issue before the Court, therefore, is whether Fun Express has monopoly power. Monopoly power, also referred to as market power, has been defined as the "power to control prices or exclude competition." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992). Importantly, monopoly power is measured based on the "relevant market," which Yagoozon described generally as "party goods" in its Objection and at oral argument.[3] (Document No. 11-1, p. 9-10). See United States v. Grinnell Corp., 384 U.S. 563, 570-571 (1966). In short, the Complaint is vague, at best, in its definition of the "relevant market" and is silent as to any allegations that Fun Express attempted to, or actually obtained, a monopoly in the "party goods" market.[4] Accordingly, without any viable allegations of a monopoly whatsoever against Fun Express, other than Yagoozon's conclusory allegations of a violation of Section 2, I recommend that Yagoozon's Section 2 claim be dismissed.

### 2. Yagoozon's Claims Under the Robinson-Patman Act and the Clayton Act

The Robinson-Patman Act was enacted as an amendment to Section 2 of the Clayton Act, 15 U.S.C. § 13. Although Yagoozon pled separate claims under the Robinson-Patman Act (Count II) and the Clayton Act (Count IV), it conceded at oral argument that the claims are "basically the same

---

[3] Yagoozon asserts that "[w]hether the relevant market is sufficiently established as the market for party goods, or should have a narrower definition, is a premature determination at this junction." (Document No. 11-1, p. 10). Again at Oral Argument, Counsel for Yagoozon noted that it would be "premature" to specifically identify the relevant market because an economist must make the determination of what the market is, and how it is effected.

[4] To the extent Yagoozon is attempting to assert a "shared" monopoly between Defendant Fun Express and its parent, Oriental Trading Co., that unstated allegation also fails for a variety of reasons, but most specifically because allegations of shared power must be ignored. It is well established that a bald allegation of "shared monopoly" is simply insufficient to satisfy the test for monopoly power. See Santana Prod., Inc. v. Bobrick Washroom Equip., 249 F. Supp. 2d 463, 518-519 (M.D. Pa. 2003) (collecting cases).

count." The Court has reviewed the factual premises alleged and the relief sought and concludes that Count II and Count IV are duplicative and should be evaluated together.

The Robinson-Patman Act states, "[i]t shall be unlawful for any person...to discriminate in price between different purchasers of commodities...where such commodities are sold for use, consumption, or resale within the United States." Plaintiff seeks relief under these statutes for alleged price discrimination. In order to state a claim for price discrimination, Yagoozon is required to allege that Fun Express sold the same item to two different purchasers for two different prices. F.T.C. v. Anheuser-Busch, Inc., 363 U.S. 536, 549 (1960). Yagoozon's Complaint alleges that Fun Express engaged in price fixing, discriminated against Plaintiff and refused to deal with Plaintiff, terminated its distributorship with Plaintiff, and conspired with Oriental Trading Company to oust Yagoozon from the market for items produced by Fun Express. (Document No. 1, ¶¶ 25-32, 40-46). The Complaint fails to "establish two separate and contemporaneous sales transactions made by the same seller to two different purchasers" as is required. Khoury v. Getty Petroleum Corp., No. 93-0216T, 1993 WL 622968, *4 (D.R.I. Dec. 3, 1993) (quoting Security Tire & Rubber Co. v. Gates Rubber Co., 598 F.2d 962, 963 (5th Cir. 1979)). The Khoury court further noted that a plaintiff must "establish that defendant discriminated in price between plaintiff and another purchaser that competed with the plaintiff at the same level of distribution and that such discrimination substantially lessened competition." 1993 WL 622968 at *6.

While the Complaint is silent as to the required elements of a price discrimination claim, Yagoozon claimed at oral argument that Fun Express sold an item to Yagoozon at one price and that Fun Express sold the same item to Oriental Trading at another price. Yagoozon concluded that Fun Express was discriminating in price, in favor of Oriental Trading. As a preliminary matter, the Complaint does not contain any specific allegations outlining these two alleged sales, what the sale

price was or the product at issue. In fact, while the Complaint does allege that Fun Express terminated its business relationship with Yagoozon over a pricing issue between Oriental Trading Co. and Yagoozon, the product with disputed pricing was never identified, the price was never identified and the two products were described by Yagoozon as only "similar" to one another – not identical. Additionally, even if the Court credited the unpled allegation that Fun Express sold items to Yagoozon for one price and to Oriental Trading Co. for another price, that allegation still does not comprise a Robinson-Patman Act claim since Oriental Trading Co. is the parent corporation of Fun Express. See Khoury 1993 WL 622968 *4 (internal citations omitted) (noting that a parent and its wholly-owned subsidiary are treated as a "single economic entity," and the Robinson-Patman Act is "not concerned with transfers between them.")[5]. The allegations in the Complaint are simply too sparse to require Fun Express to continue to defend this claim. Accordingly, I recommend that Yagoozon's claims brought under the Robinson-Patman and Clayton Acts be dismissed.

### 3. Yagoozon's Claims Under the Federal Trade Commission Act

Count III of Yagoozon's Complaint is framed as a claim under the Federal Trade Commission Act, 15 U.S.C. § 41 et. seq. which outlaws "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce...." Yagoozon asserts that Fun Express violated this statute when it fixed prices, discriminated against it, refused to deal with it, terminated its distributorship with Plaintiff and conspired with Oriental Trading Co. to oust it from the market for items produced by Fun Express. (Document No. 1, ¶¶ 33-39). Yagoozon's Federal Trade

---

[5] In Khoury, the Court concluded that a transfer from a parent to its wholly-owned subsidiary could not be considered one of the two required sales to demonstrate price discrimination under the Robinson-Patman Act. In this case, Yagoozon is alleging the reverse– that the wholly owned subsidiary (Fun Express) sold a product to its parent corporation (Oriental Trading Co.). Despite the improbability that such a transaction would occur, the general principle that the Robinson-Patman Act treats the parent and subsidiary as a single entity is still applicable and mandates that any such transfer would not be deemed a sale under the Act.

Commission Act claims must be dismissed, however, because it is well established that only the Federal Trade Commission may bring claims under the Federal Trade Commission Act. Liu v. Amerco, 677 F.3d 489, 492 (1st Cir. 2012) (noting the "FTC Act contains no private right of action"); Symes v. Bahama Joe's, Inc., No. 87-0963-Z, 1988 WL 92462, *5 (D. Mass. Aug. 12, 1988) ("there is no private right of action under the FTC Act."). Accordingly, I recommend that Count III be dismissed.

**Conclusion**

For the foregoing reasons, I recommend that Fun Express' Motion to Dismiss (Document No. 9) be GRANTED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 10, 2014